UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRED REEVES # 241575,

                Plaintiff,              Case No.: 06-CV-10326

                                             HON. AVERN COHN
vs.                                    MAG. JUDGE STEVEN D. PEPE

D. WALLINGTON, D. SIVIK, K. KEDRON,
L. SHARPE, K. PETERS, D. LEMMA,
D. SVENSEN, H. BAILEY, L. DEVOOGHT,
L. ALEXANDER, AND DR. BURTCH,

                DEFENDANTS.
_____/

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

       This is a pro se prisoner civil rights action brought pursuant to 42 U.S.C. § 1983.  In his

Complaint, Plaintiff alleges that the Defendants were deliberately indifferent to his serious

medical needs. Defendants Dave Sivik, Lisa Balderstone,[1] Linda Sharp, Deborah Wallington,

Karen Peters, David Lemma, Heather Bailey, Karen Kedron, Lynn DeVooght and Larry

Alexander, filed a Motion for Summary Judgment (Dkt. #28)  and Defendant Dr. Burtch filed a

Motion to Dismiss Plaintiff's Complaint (Dkt. #51). Plaintiff filed an Affidavit In Opposition to

Defendants' Brief In Support of Motion for Summary Disposition, (Dkt. #43), and a Reply to

Defendant Dr. Burtch's Motion to Dismiss Plaintiff's Compliant (Dkt. #56).  Dr. Burtch filed a

Reply to Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Complaint ( Dkt.

_____

[1] Defendant Lisa Balderstone was voluntarily dismissed on August 24, 2006 (Dkt. #55).

#57) and a Supplemental Brief in Support of Defendant's Motion to Dismiss Plaintiff's Complaint (Dkt. #59).

Plaintiff filed a Response to Defendant Dr. Burtch's Reply to Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Complaint, (Dkt. #61), and a Reply to Dr. Joseph Burtch's Supplemental Brief in Support of Defendant's Motion to Dismiss Plaintiff's Complaint (Dkt. #63).

## II.    FACTS AS ALLEGED BY PLAINTIFF

Plaintiff was transferred to Standish Maximum Facility [SMF] on November 23, 2005 ("Prisoner Civil Rights Complaint" [Complaint] filed January 24, 2006, page 6, Dkt. #1).  He alleges that when he arrived he notified nurses Lemma and Alexander that he was having heart pain and breathing difficulty.  He alleges that his nitro patches, blood pressure medication, and other medications were expired.  He stated that he was told by Nurse Lemma "oh, you can go a few days without your meds, do not worry about it."  (Dkt. #1, page 6).  He later stated that it was nurse Svensen that told him same (Dkt. #43, page 8).

Two days later, on November 25, he alleges that he sent a letter to Health Care addressing Nurses Bailey, Devooght, Lemma, Svensen, Shapre, and Peter's regarding his ongoing heart and breathing problems and lack of medication (Dkt. #1, page 7).

Five days later, on November 30, Plaintiff was taken to health care and when he told his symptoms to Nurse Sharpe, she scheduled him for an appointment with Dr. Burtch.  He was seen the same day around noon.  Plaintiff indicates that he told Dr. Burtch about his medical condition and lack of medication, and Dr. Burtch indicated that he would reorder the medications, but Plaintiff indicates that he failed to do so.

2

Later in the evening on November 30, 2005, Plaintiff stated that he had not received any of his medications and was transported to St. Mary's Hospital.[2] *Id.* at 8. The next day he was released from the hospital and the nurse brought the following medications to his cell: Gaviscon, Prilosec, Tenormin, Vasotec, HCTZ, and K-Dur, but no nitro patches or asthma inhalers. He stated that he continues to have heart and breathing difficulty.

Additionally, Plaintiff argues that during his November 30, 2005, visit with Dr. Burtch that he was given a medical detail to notify the housing unit staff to remove him during the use of chemical agents. Yet, Plaintiff alleges that when  he tried to notify the officers of this medical detail on December 7, 2005, prior to their use of chemical agents on another prisoner, they ignored his requests to be removed pursuant to his detail. Specifically, he alleges that he called out to Sergeants Boulderstone and Wallington to remove him, but "they informed [him] that everyone who was being moved was already moved and that no one else would be moved." (Dkt. #1, pages 8-9). Consequently, Plaintiff alleges that he experienced severe heart pains and breathing difficulties.

Later that day, Plaintiff stated that he became aware that a different prisoner would be gassed and asked Officer Kendron to move him and showed her a copy of the medical detail. He alleges that officer Kendron then stated that she "did not care about any medical details" and would not move him even after he explained that chemical agents would cause him heart and breathing problems (Dkt. #1, page 10). He stated that he then called out to an unknown officer and Lieutenant Goheem, regarding his medical detail, but they also refused to move Plaintiff.

---

[2]Medical records indicate that he was admitted to the hospital at 1:18am on December 1(Dkt. #28, Exhibit M, page 1).

3

Further, Plaintiff alleges that he notified ARUS Sivik that he had a medical detail regarding removal prior to the use of chemical agents, but ARUS Sivik stated, "I can breath just fine, your heart and breathing problems are your problems." (Dkt. #1, pages 10-11).

Subsequently, on the night of December 7, 2005, Plaintiff was experiencing heart pain and breathing difficulty and was sent to St. Mary's Hospital.  *Id.* at 10.  Plaintiff was discharged December 8, 2005.[3]  (Dkt. #28, at page 5, n.29 (citing St. Mary's Hospital Records)).

Plaintiff was returned to the prison and saw Dr. Burtch on December 14, 2005 (Dkt. #1, page 10).  At that time, Dr. Burtch ordered Plaintiff's nitro patches and asthma inhalers.

Plaintiff seeks a TRO/Preliminary Injunction, a jury trial, and compensatory damages of $50,000 each, as well as punitive damages in the amount of $20,000 each  (Dkt. #1, page 11).

## III.    STANDARD

### A.    Motion to Dismiss pursuant to FRCP 12(b)(6)

The purpose of a motion under Rule 12(b)(6) is to test the sufficiency of the complaint. When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded allegations in the complaint as true.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  Dismissal pursuant to a Rule 12(b)(6) motion is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citation omitted).

_____

[3] Defendants argue that he was released the same evening, December 7th.  Plaintiff's Affidavit In Opposition to Defendants' Brief In Support of Motion for Summary Disposition contains medical records revealing that he was discharged on December 8th (Dkt. #43, Ex-F-8 and Ex-F-16).

A court considering a motion to dismiss under Rule 12(b)(6) "must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir.2002) (citing *Turker v. Ohio Dep't. of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir.1998)). "Dismissal of the complaint is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir.2003) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).  In applying these standards, the court must read plaintiff's pro se complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Rules 12(b) and (c) of the Federal Rules of Civil Procedure provide that if, on a motion to dismiss under Rule 12(b)(6) or a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment and disposed of as provided in Rule 56.

### B.    Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact.  The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The moving party has "the burden of showing the absence of a genuine issue as to any material fact."  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  *See also Lenz*

*v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985).  In resolving a summary judgment motion, the

Court must view the evidence in the light most favorable to the non-moving party.  *See Duchon*

*v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711

F.2d 1319 (6th Cir. 1983).  But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S.

317, 322-23 (1986):

> T]he plain language of Rule 56(c) mandates the entry of summary judgment, after
> adequate time for discovery and upon motion, against a party who fails to make a
> showing sufficient to establish the existence of an element essential to that party's
> case, and on which that party will bear the burden of proof at trial.  In such a
> situation, there can be "no genuine issue as to any material fact," since a complete
> failure of proof concerning an essential element of the non-moving party's case
> necessarily renders all other facts immaterial.  The moving party is "entitled to a
> judgment as a matter of law" because the non-moving party has failed to make a
> sufficient showing on an essential element of her case with respect to which she has
> the burden of proof.

Moreover, when a motion for summary judgment is filed, the adverse party may not merely rely

"upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as

otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue

for trial."  Fed. R. Civ. P. 56(e).

### C.    Deliberate Indifference

The Supreme Court has recognized the responsibility of the courts "to scrutinize claims

of cruel and unusual confinement."  *Rhodes v. Chapman*, 452 U.S. 337, 352 (1981).  Included as

a type of conduct that violates the Eighth Amendment is a prison official's deliberate

indifference to a prisoner's serious medical needs.  *See, e.g.*, *Estelle v. Gamble*, 429 U.S. 97

(1976); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976).  To succeed on a claim of

deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective

one.  He must show he had a serious medical need, and he must show that defendant, being

aware of that need, acted with deliberate indifference to it. *Wilson v. Seiter*, 501 U.S. 298, 300 (1991).

A medical need is "serious" if it has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention. *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988). A serious ailment requires immediate attention or is potentially life-threatening: "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (citation omitted). The fact that a plaintiff endured unnecessary pain and suffering is sufficient for an Eighth Amendment claim. *Id.* In *Westlake v. Lucas*, the Sixth Circuit stated that "a prisoner who is needlessly allowed to suffer pain when relief is readily available does have a cause of action against those whose deliberate indifference is the cause of his suffering." *Westlake*, 537 F.2d at 859.

"Deliberate indifference" has been variously defined by the federal courts that have considered prisoners' Eighth Amendment claims, but all agree that it is more than mere negligence and less than actual intent. In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court explained the meaning of "deliberate indifference."

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; *the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference*. . . . Eighth Amendment suits against prison officials must satisfy a "subjective" requirement . . . .

511 U.S. at 836-37 (emphasis supplied). *See also Estelle v. Gamble,* 429 U.S. at 105-106 (a complaint that a physician has been negligent in diagnosing or treating a medical condition does

7

not state a valid claim under the Eighth Amendment; "medical malpractice does not become a

constitutional violation merely because the victim is a prisoner"); *Sanderfer v. Nichols*, 62 F.3d

151, 154 (6th Cir. 1995) (deliberate indifference is the equivalent of "criminal recklessness,

which requires a subjective showing that the defendant was aware of the risk of harm"); *Gibson

v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992) ("[o]bduracy or wantonness, not inadvertence or good

faith error, characterizes deliberate indifference").  Accordingly, even "gross negligence" by

prison officials is insufficient to support a deliberate indifference claim.  *Ribble v. Lucky*, 817 F.

Supp. 653, 655 (E.D. Mich. 1993).

     As noted in *Estelle*, "[i]n order to state a cognizable claim, a prisoner must allege acts or

omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."

*Estelle*, 429 U.S. at 106.  Delay in access to medical attention can violate the Eighth Amendment

when it is "tantamount to 'unnecessary and wanton infliction of pain.'"  *Hill v. DeKalb Regional

Youth Detention Center*, 40 F.3d 1176, 1187 (6th Cir. 1994) (quoting *Brown v. Hughes*, 894 F.2d

1533, 1537 (11th Cir.) (per curiam), *cert. denied*, 496 U.S. 928, 110 S. Ct. 2624 (1990)).

## IV.    **DISCUSSION**[4]

---

[4]Defendants do not plead failure to exhaust administrative remedies.  *Jones v. Bock*, 549
U.S. ___, 2007 WL 135890, 2007 U.S. LEXIS 1325 (2007), held  "that failure to exhaust is an
affirmative defense under the PLRA, and that inmates are not required to specially plead or
demonstrate exhaustion in their complaints."  *Id.* at *11.

A.      **Use of Chemical Agents and Defendants Sivik, Wallington, and Kedron**

Defendant Sivik is Assistant Resident Unit Supervisor at SMF (Dkt. #32, Exhibit K).

Plaintiff is on modified status requiring permission of the Grievance Coordinator to file any

futher grievances. In his December 1, 2005, letter, to Grievance Coordinator B. Alexander

unsuccessfully requesting permission to file a grievance,  Plaintiff alleges that

> This grievance is being requested due to the fact that Iv [sic] been places on a rock
> that is filthy with the constant smell of feces, urin [sic] etc. [T]he smell/condition are
> causing me heart pains (angina).  The noise level gets unbearable and adds to the
> stress.  I've spoken to Kraslnak, Sivik, and each sgt/lt and officer in the unit to no
> avail.

(Dkt. #1, Ex. 2).  In his December 12, 2005, letter to Grievance Coordinator Alexander, Plaintiff

states that

> On the morning/afternoon of 12/7/05 the ERT was preparing to use chemical agents
> directly across the hall from me on cell # 1440-2 #unit.  I notified officers Crandle
> and John doe # 1-2 that the doctor had ordered a medical detail that I be moved from
> the unit prior to the use of the chemical agents and they electively fail [sic] to honor
> the detail or call health care to confirm this.  Upon the ERT arrival I notified each of
> them that I had breathing difficulties and needed to be moved prior to the use of
> chemical agents.  The ERT electively refuse to move me prior to the use of chemical
> agents and I had an asthma attack and could not get much relief due to no inhalers
> or nitro patches.  ARUS Sivik was notified and fail [sic] to act.

(Dkt. #1, Ex. 3, page 1).

In his Complaint, Plaintiff reiterates that he notified Defendant Sivik of his detail and, as

noted above, he adds that ARUS Sivik responded  "I can breath just fine, your heart and

breathing problems are your problems."  (Dkt. #1, pages 10-11).

In an Affidavit attached to Defendants' Motion for Summary Judgement Defendant Sivik

denies making such statements (Dkt. #28, page 5; Exhibit K).  Defendant Sivik states in his

Affidavit that "Prisoner Reeves never notified me that he had a medical detail requiring that his removal from the area prior to the use of chemical agents [sic] on two prisoners on December 7, 2005." He adds "I did not speak with prisoner Reeves regarding any health issues on that date, and never said, 'I can breath just fine, your heart and breathing problems are your problems,' as alleged at page 10 of the Complaint." (Dkt. #28, Exhibit K).  In Plaintiff's Affidavit In Opposition to Defendants' Brief In Support of Motion for Summary Disposition, he does not respond to Defendant Sivik's denial directly.

Defendant Wallington, an MDOC Sergeant at SMF, was assigned as Team Leader for the ERT on December 7, 2005 (Dkt. #32, Exhibit I).  Again, Plaintiff's December12, 2005, letter states that

> On the morning/afternoon of 12/7/05 the ERT was preparing to use chemical agents directly across the hall from me on cell # 1440-2 #unit.  I notified officers Crandle and John doe # 1-2 that the doctor had ordered a medical detail that I be moved from the unit prior to the use of the chemical agents and they electively fail [sic] to honor the detail or call health care to confirm this.  Upon the ERT arrival I notified each of them that I had breathing difficulties and needed to be moved prior to the use of chemical agents.  The ERT electively refuse to move me prior to the use of chemical agents and I had an asthma attack and could not get much relief due to no inhalers or nitro patches.

Defendants' motion claims that  "Defendant Wallington, who lead the ERT for the first incident on December 7, 2005 denies having any knowledge that Plaintiff had a detail; unit staff told her the unit was clear to proceed with the ERT. She denies that Plaintiff told her about or showed her a detail." (Dkt. #28, pages 9-10, Exhibit I).  Specifically, Defendant Wallington's Affidavit states, "[o]nce the Housing Unit notified me that the unit was clear, I began moving the squad into position.  I do not recall hearing prisoner Reeves tell me or beg me that he had a medical

detail requiring his removal from an area when chemical agents are used."  (Dkt. #28, Exhibit I).

In response to Defendant Wallington's denials, Plaintiff stated that on December 7, 2005,

> I heard a female voice on the rock at which time I was told that Sgt. Wallington and Sgt. Balderstone was on the rock [sic] and I called out to them both while holding my medical detail out the side of my door informing them that I had a medical detail to be moved prior to the use of chemical agents and was told that I did not have a medical detail and that "everyone who was being moved was already moved and that n one else would be moved." . . . When Sgt. Wallington came onto the rock with the Emergency Response Team I begged her and John Does 1-5 to remove me prior to the use of chemical agents and they electively fail to do so [sic].

(Dkt. #43, page 10).

Defendant Kedron is a correctional officer at SMF (Dkt. #32, Exhibit J).  Plaintiff does

not mention Defendant Kedron in his December 1, 2005, letter; however, he stated in his

December 12, 2005, letter that

> During the second shift the ERT was about to use chemical agents on prisoner Broch in cell #2-132, on 12/7/05.  I notified officer Kedron and Kerrian that I had a medical detail to be removed from my cell prior to the use of chemical agents and they electively fail [sic] to remove me.  I then notified Lt. John doe and Sgt John doe to no avail.  After the chemical agents were used I had to be transported and admitted to the St. Mary's Hospital.

(Dkt. #1, Ex. 3, pages 1-2).

Defendants' motion claims that "Defendant Kedron was not present when chemical

agents were used the first time, and also denies that Plaintiff told her about or showed her a

detail."  (Dkt. #28, page 10).  Defendant Kedron also filed an Affidavit stating

> On page 9 of prisoner Reeves' Complaint, he alleges that on December 7, 2005, around shift change, he notified me that he had a medical detail requiring his removal from an area where chemical agents are going to be used, and that he showed me the detail.  Prisoner Reeves also alleges that I said that I "'did not care about any medical details' and that I 'was not moving any one else.'"  These allegation are not true.

Further, Defendant Kedron stated

> My assignment as a Corrections Officers [sic] is usually on the yard, but on December 7, 2005, I was assigned to the upper "A" wing of Unit 2. . . . I recall that when I entered the unit on December 7, 2005, the chemical agent had already been dispersed before I made my first round. . . . Chemical agents were used again at approximately 1740 hours. Again, I have no recollection of prisoner Reeves telling me about a medical detail or showing me any such detail. . . . I have no recollection of anyone bringing to my attention a medical detail for prisoner Reeves, #241575.

In Plaintiff's Affidavit In Opposition to Defendants' Brief In Support of Motion for Summary Disposition he reiterates his claim against Defendant Kendron. (Dkt. #43, page 11).

In response to Defendants' Motion for Summary Judgement, Plaintiff argues that

> At shift change at approximately 5:40PM I had began [sic] to recover somewhat and was notified that the old man in cell #132 was about to be gassed at which time I told officer Kedron that I needed to be removed prior to the use of chemical agent at which time I also showed her my copy of the medical detail. . . . Officer Kedron said that she did not care about any medical details and that no one else was being moved.

*Id.* No one is challenging that Defendant Kedron was only present during the second use of chemical agents on December 7, 2005. Thus, the issues with regard to this Defendant are whether Plaintiff showed Defendant Kedron his medical detail prior to the use of chemical agents during the second shift on December 7, 2005, and if so was this deliberate indifference.

Defendants argue that Plaintiff has not shown that Defendants acted with deliberate indifference (Dkt. #28, pages 9-11). Generally, the Defendants argue that

> the use of chemical agents did not put Plaintiff at immediate risk of harm. The chemical agent was used at 1402 hours (2:02 pm) and about 1740 hours (5:40 pm). Approximately three hours later, at 8:30 pm, Plaintiff complained of chest pain. He was given three doses of nitroglycerin, which reduced his pain, and then sent immediately to the hospital. At the hospital he was evaluated, tests were conducted, but there were no findings of heart or lung problems. [n. 50 Def Ex L, SMF medical records; Def Ex M, St. Mary's Hospital records; Def Ex G, Peters affidavit] The records do not disclose that Plaintiff complained of adverse effects from chemical agents between the 2:02 pm and 5:40 pm dispersals.

(Dkt. #28, page 10). Further, Defendants argue that

In the present case, Plaintiff had a medical order authorizing his removal from the area when chemical agent was used. The existence of this order was not confirmed by health care staff and relayed to the Defendants, so Plaintiff was not moved. The medical records disclose only that Plaintiff suffered angina some three hours after the second use of chemical agents. He was immediately treated by health care staff and then sent to the hospital, where evaluation and testing revealed no significant problems. Based on the lack of medical documentation of any serious injury to Plaintiff caused by the use of chemical agents on other prisoners, and the lack of any probative evidence showing that Defendants had actual knowledge that Plaintiff was to be removed from the area, Defendants submit that Plaintiff has failed to establish an Eighth Amendment claim, and Defendants are entitled to summary judgment.

(Dkt. #28, page 11).

To meet the requirements of a deliberate indifference claim, Plaintiff must show he had a serious medical need, and he must show that Defendants, being aware of that need, acted with deliberate indifference to it. *Wilson*, 501 U.S. at 300. Although Plaintiff's medical need to be moved would qualify as "serious,"[5] satisfying the objective prong of the deliberate indifference standard, the second prong is not as easily met. The issue becomes whether each Defendant was aware of the need to be moved and acted with deliberate indifference to such knowledge. *See id.*

In Plaintiff's Affidavit In Opposition to Defendants' Brief In Support of Motion for Summary Disposition he states that he "notified the defendants that [he] had a medical detail and they electively fail [sic] to remove me prior to the use of chemical agents." (Dkt. #43, page 14).

As Plaintiff notes, Defendants acknowledge the existence of the medical detail requiring removal prior to the use of chemical agents, but argue that it "was not confirmed by health care staff and relayed to Defendants, so Plaintiff was not moved." (Dkt. #28, page 11; Exhibit L, page 105). Further, a review of the copy of Plaintiff's December 12, 2005, Grievance to Coordinator B. Alexander, reveals a handwritten note that there is "no detail to be removed

_____

[5]Defendants concede that this element has been met (Dkt. # 28, page 9).

13

Denied 12-12-05 B Alex" (Dkt. #1, Ex. 3).  In addition, Plaintiff argues that "I notified the Defendants that I had a medical detail and they electively fail to call and verify it, which is contrary to policy" (Dkt. #28, page 16).  Plaintiff also argues that a critical incident video exists that would include audio of him "begging to be moved because of medical problems and a medical detail" (Dkt. #28, page 20).  While Plaintiff's claim he had a copy of his detail on December 7, before the use of chemical agents, Plaintiff on December 12, 2005,  requested a copy of his detail from the Health Unit and Nurse Lemma sent him a copy (Dkt. #43, Ex-A-30).

Plaintiff filed Affidavits from prisoner's Dominec J. Holmes, #275727, Rafeal Bean, #253562, and Lorenzo Anthony, #247064, corroborating his allegations (Dkt. #43, Exhibits L, M, and N).  The Affidavits state that Plaintiff had a medical detail, and called out to prison officials regarding same prior to the use of chemical agents on December 7, 2005.  The Affidavits also indicated that some prison officials, David and Grandsen (not named in the Complaint) saw the detail, but indicated that Plaintiff's copy was insufficient.

The central factual issue on which the legal issue of deliberate indifference turns is whether Plaintiff showed or attempted to show Defendant Sivik, Walington, or Kedron his medical detail prior to the use of chemical agents on December 7, 2005.  While Defendant argues that "[p]erhaps there was some miscommunication between health care staff and custody staff about the existence of a detail and Defendants cannot be charged with deliberate indifference if they had no knowledge of Plaintiff's detail;" and "custody staff do not have access to prisoner's medical records, and if someone in health care missed that record, it is at most negligence, not deliberate indifference," Plaintiff's argument is that he made them aware of his

14

detail by showing them his copy.  It is true that a miscommunication or missed record would amount to negligence, not deliberate indifference.

Yet, if Plaintiff's factual allegations that he showed his copy of the medical detail regarding his removal to Defendant Sivik, Wallignton, or Kedron and these three Defendants ignored this notice are determined to be true, this could be found by a jury to be deliberate indifference.  Plaintiff's submissions, if believed, make out a prima facie case that he has a serious medical need, and notice of medical detail requiring he be removed when chemical agents are used in his housing unit would put a reasonable corrections officer on notice that there was a serious risk of harm to Plaintiff if the medical detail was not followed.   From this a jury could conclude that each of these Defendants did know Plaintiff had a serious medical need requiring his removal from the housing unit prior to use of chemical agents and their failure to do so exposed Plaintiff to a substantial risk of serious harm.  Thus the facts are sufficient for a jury to find both the objective and subjective components of an Eighth Amendment violation of deliberate indifference.  While *Farmer* requires that the defendant actually draw the inference that failure to act will create a substantial risk of serious harm to Plaintiff, the jury could draw this inference also from these facts because a reasonable corrections officer would draw this conclusion from these facts. *Farmer, supra*, 511 U.S. at 836-37.  While it is true that if any of the Defendants – whether because of negligence or "miscommunications" or plain stupidity –  did not subjectively draw this obvious inference from being shown or offered the medical detail that would be a defense to an Eighth Amendment claim.  But Plaintiff's prima facie showing here is sufficient to proceed to a jury, and any such Defendant making this claim would need present evidence from which a jury might believe the normal inference of substantial risk of serious

harm was not drawn.  An unjustified refusal to look at or check the medical detail that was being offered to the correction officer by Plaintiff would not suffice for this defense because a jury could find that such selective ignorance also would demonstrate a deliberate indifference to Plaintiff's pleas for assistance to prevent substantial risk of serious harm to him.  In other words, deliberate indifference to a serious medical need can be established by a choice to maintain deliberate ignorance in the face of notice that there was a potential substantial risk of serious harm to an inmate.   Thus, viewing the evidence in a light most favorable to the nonmoving party, a factual issue exists as to whether Plaintiff's allegation regarding showing Defendant Sivik, Wallinton, or Kedron the detail is true.  This would be an issue for a jury.

Defendants also argue that they are entitled to qualified immunity.  Yet, there remains a genuine issue of material fact which, if resolved in Plaintiff's favor, would also demonstrate a factual context from which it would be clearly established that failure to act would constitute deliberate indifference to Plaintiff's serious medical need.  The Sixth Circuit has held that "summary judgment would not be appropriate if there is a factual dispute (i.e. a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights." *Jackson v. Hoylman*, 933 F.2d 401, 403 (6th Cir. 1991) (quoting *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir.1988)).  Thus, since there is a genuine issue of material fact regarding whether Defendants were deliberately indifferent, they cannot claim qualified immunity.

In the alternative, Defendants argue that any injury that Plaintiff suffered was *de minimums*, thus his claims should be denied.  As Defendants point out, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental

16

or emotional injury suffered while in custody without a prior showing of physical injury." 42

U.S.C.A. § 1997e(e).

Defendants rely on a similar case brought by Plaintiff, in which Judge Miles of the

Western District of Michigan adopted the following analysis:

> Although § 1997e(e) does not define "physical injury," case law construing the statute tends to reflect the view that although the predicate injury need not be significant, it must be more than de minimis. *See Jarriett v. Wilson*, 414 F.3d 634, 640 (6 Cir.2005) (swelling, pain, and cramps in leg after plaintiff's release from strip cage was no more than de minimis injury for purposes of § 1997e(e), where subsequent medical findings related to prior injury plaintiff suffered in motorcycle accident); *see also Siglar v. Hightower*, 112 F.3d 191, 193 (5 Cir.1997) (plaintiff's alleged injury-a sore, bruised ear lasting for three days-was de minimis and did not support a valid Eighth Amendment claim for excessive use of force nor did plaintiff have the requisite physical injury to support a claim for emotional or mental suffering).
>
> Even assuming that plaintiff experienced a reaction to the use of chemical agents on another prisoner, he suffered at most only de minimis physical injury and was treated using medications he had already been receiving. Under § 1997e(e), plaintiff therefore has no claim for relief against defendant Ray as a matter of law for any mental anguish which he experienced as a result of not being moved before use of chemical agents on another prisoner. Under the circumstances, granting plaintiff an extension of time in which to complete service on this defendant would serve no purpose.

*Reeves v. Jensen*, 2005 WL 2090896, at *2(W.D. Mich. 2005). It is significant that the Sixth

Circuit case of *Jarriett v. Wilson*, 414 F.3d 634, 640 (6 Cir.2005) is unpublished. "This opinion

was erroneously published in the Federal Reporter. It was not intended for full-text publication.

For the unpublished opinion, *see* 2005 WL 3839415." *Id.*

The Sixth Circuit Court of Appeals has not published any cases defining *de minimis*

injury. Yet, in *Jarriett*, the Court did examine what unpublished law existed:

> This court has indicated in unpublished opinions that even though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more

17

> than *de minimis* for an Eighth Amendment claim to go forward. *See, e.g., Adams v. Rockafellow*, 66 Fed. Appx. 584, 586 (6th Cir.2003) (citing *Siglar*, 112 F.3d at 193, and *Luong v. Hatt*, 979 F. Supp. 481, 485 (N.D.Tex.1997)); *Corsetti v. Tessmer*, 41 Fed. Appx. 753, 755 (6th Cir.2002) (citing *Siglar* and *Luong* in finding that two small bruises and minor cuts were *de minimis* injury); *Styles v. McGinnis*, 28 Fed.Appx. 362, 364 (6th Cir.2001) (citing *Siglar*); *Benson v. Carlton*, 2000 WL 1175609, at * 1, 2000 U.S.App. LEXIS 21202, at *3 (6th Cir. Aug. 9, 2000), (citing *Siglar* in finding that prisoner's "whirling sensation" in head after missing a meal was *de minimis* injury); *see also Hudson v. McMillian*, 503 U.S. 1, 9-10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (holding that "cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force") (quotation and citation omitted); cf. id. at 10, 112 S.Ct. 995 (finding that "bruises, swelling, loosened teeth, and a cracked dental plate" suffered as the result of a beating by prison guards were not *de minimis* injuries).

*Jarriett v. Wilson*, 162 Fed. Appx. 394, 400, 2005 WL 3839415, at *4 (6th Cir. 2005).

The *Luong* case out of the 5th Circuit cited in *Jarriett* is nevertheless instructive, "finding that minor abrasions on the forearm and chest, a contusion with slight swelling of the jaw, a swollen wrist, cuts on the face and tongue, and a bloody nose were only *de minimis* injuries because they were the types of injuries that would not require 'a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury'" *Jarriett*, 162 Fed. Appx. at 401, 2005 WL 3839415, at *4  (quoting *Luong*, 979 F. Supp. at 485-86).  In the present case, Plaintiff was transported to the emergency room for "shortness of breath" and "chest pain" (Dkt. #43, Ex-F-5), for which he was "Required to be hospitalized for observation and to rule out for MI [myocardial infarction]" (Dkt. #43, Ex-F-4). Thus, Defendants argument that this was a *de minimis* injury is unpersuasive.

The test for deliberate indifference is whether there exists a "substantial risk of serious harm" not whether it actually occurred.  *Farmer*, 511 U.S. at 837.  While an inmate can no longer make a claim for mental or emotional injury suffered while in custody without a prior showing of physical injury, that limitation is distinguishable from an act of deliberate

18

indifference that causes mental or emotional stress that in turn causes a physical injury – be that physical injury a blood flow impairment causing angina or a breathing limitation such as acute shortness of breath.  When either of these result in a trip to the emergency room – even if only to verify no permanent physical damage –  they have left the reservation of "de minimis" and they have entered the domain where a jury could find them to constitute actionable injury.  *See cf. Styles v. McGinnis*, 28 Fed. Appx. 362, 364-365, 2001 WL 1667273, at *2 (6th Cir. 2001) (holding that a § 1983 claim for sexual abuse where Plaintiff's "claim of injury as the rectal examination resulted in increased blood pressure, chest pain, tachycardia, and numerous premature ventricular contractions" was sufficient to find physical injury under 1997e(e) and survive a motion to dismiss).

### B.    <u>Delay in Receiving  Medications and Defendants Sharpe,[6] Peters, Lemma, Svensen, Bailey, DeVooght, and Alexander</u>

Defendant Peters is a Registered Nurse, employed by MDOC as the Health Unit Manager at SMF (Dkt. #32, Exhibit G).  Defendants  Lemma, Alexander, Svensen, Bailey are Registered Nurses employed by MDOC at SMF (Dkt. #32, Exhibit A, Exhibit B, Exhibit F, Exhibit E). Defendant DeVooght is a Licensed Practical Nurse employed by MDOC at SMF (Dkt. #32, Exhibit C).

---

[6]Defendant Sharpe did not file an Affidavit with the Defendants' Motion for Summary Judgement.

Plaintiff does not mention Defendant Peters, Lemma, Svensen, Bailey, DeVooght, and Alexander by name in either of his letters requesting permission to file grievances, but states in his December 1, 2005 letter that

> 1.      I arrived at this institution on 11/23/05 from LMS.  I notified nurse John Doe #1 that I had not received my medication and wish that he would bring it to me because I was not feeling well.  Nurse John Doe #1 told me that I could wait a couple days for my meds it would not hurt.  I did not receive my meds until the evening of 11/25/05.  Prior to requesting this grievance I've tried to speak to nurse John Doe #1 to no avail.
>
> 2.      This grievance is being requested due to the fact that I've been without nitro patches for my heart condition since 11/28/05 as well as other heart and blood pressure meds and had to be transported to St. Mary's Hospital on 11/30/05 after having severe (angina) pains.  On 12/2/05 the nurse brought some of my meds but I still have no nitro patches as prescribed by the doctor.  This grievance is being written against the entire SMF medical staff including Terry Malloy and William Bargerding.  prior to requesting this grievance I spoken to or tried to speak to/and written health care to no avail.  Also my inhalers have not been replaced.

In his Complaint, Plaintiff alleges that he sent a November 25 2005, letter to Health Care, addressed to Nurses Bailey, DeVooght, Lemma, Svensen, Sharpe, and Peters (Dkt. #1, page 7).  Defendants Bailey, DeVooght, Lemma, Svensen, and Peters[7] all deny the existence of such a letter and a review of the medical records reveals no such letter (Dkt. # 32, page 7; Exhibits, A, C, E, F, and G).  Plaintiff has not provided any copy of the letter.  Yet, in his responsive pleading  he reiterates that he sent the letter on November 25, 2005 (Dkt. #43, pages 8-9).  Yet, it is significant that while his January 2006 Complaint and motion response allege a November 25, 2005, letter addressed to six specifically named nurses, his December 1, 2005, letter to Grievance Coordinator Alexander has no nurse's names, uses "Nurse John Doe #1" in one part, and alleges "This grievance is being written against the entire SMF Medical staff

---

[7] Defendant Sharpe has not submitted an Affidavit as of the writing of this Report and Recommendation.

including Terry Malloy and William Bergerding." Malloy and Bergerding are not defendants in this law suit.

If there was a letter written on November 25, 2005, specifically naming six nurses, one would anticipate that the author of that November 25 letter would have those names available six days later when writing a letter to the Grievance Coordinator requesting a grievance against those nurses, and not need to assert that the grievance is against "the entire SMF Medical Staff." While a "mail box" rule might create a presumption of delivery of a letter, it does not prove the letter's content and use of this inference of receipt is dependent on addition proof of the existence of the letter, its adressee(s), and its form of mailing or other submission to the addressee(s).

An Eighth Amendment deliberate indifference claim regarding an excessive risk to inmate health or safety requires that the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists. The November 25 letter that Plaintiff claims to have sent is an out of court statement that allegedly provided this notice of his being out of his medications and having heart and breathing difficulties – the excessive risk.[8] Yet, even assuming Plaintiff is allowed to testify to the existence, contents and submission of the missing November 25 letter to the six specifically named nurse Defendants, and assuming all of this is accepted as true by a jury, Plaintiff's December 1, 2005, letter acknowledges that he got "my meds . . . the evening of November 25, 2005," the same day he wrote the six nurse Defendants. These were likely his medications packed up from his former custodial facility

---

[8] Fed. R. Evid. 1002 and 1003 require that a document's content be proved by the original or a copy of the document. Rule 1004(a) allows "other evidence of the contents of a writing . . . ." when "[a]ll originals have been destroyed. . ."

catching up with him and his new location. (Dkt. #43 Ex-A-6 & Dkt. #63 Exhibit 3).  There is an indication in this exhibit that he had some nitro tablets sent with him during the transit, and in his December 1 letter he states not having nitro patches since November 28, 2005.  He also adds his not having other heart and blood pressure medications, and an inhaler.   Yet he got more medications the day after his visit with Dr. Burtch and was treated that evening, which required an early morning visit to the St. Mary's Standish Community Hospital ER for chest pain.[9]

### Defendants Bailey, DeVooght, and Peters

Based on a review of this record, even if we assume Plaintiff sent the November 25 letter to the six Defendant nurses Plaintiff has not demonstrated sufficient evidence from which a reasonably jury could conclude that Defendants Bailey, DeVooght, and Peters (or the other nurses based on these facts alone) were deliberately indifferent to his cardiac impairment. Plaintiff makes no other arguments regarding Defendants Bailey, DeVooght, and Peters and summary judgment and they should be granted summary judgment.

The remaining nurses are Defendants Sharpe, Lemma, Svensen, and Alexander.

### Defendant Sharpe

---

[9] The records show he saw Dr. Burtch at 11:58 on November 30, 2005, that he had not missed or stopped taking an medications and meds were ordered . (Dkt. #43,  Ex-A-12 - A-14). While complaining of chest pain, shortness of breath, dizziness, headaches and fatigue, his cardiopulmonary exam was essentially normal (*Id.* at Ex. A-10.)  The new meds did not include sublingual Nitroglycerin which the record indicates were part of Plaintiff's active medications, and apparently these were available to Plaintiff because when he was taken to the SMF Emergency Room at 12:40 AM on December 1, 2005, because of sub-sternal chest pain starting at 10:30 PM the prior day, the symptoms were "[s]omewhat improved after 3 sub ling NTG." (*Id.* At Ex. A-18.).  He was transported to the St. Mary's Standish Community Hospital ER admitted at 1:18 AM where he was observed for 6 hours with no complaints of chest pain with cardiac enzymes negative for a heart attack and released.

Plaintiff alleges in his Complaint on November 30, 2005, Plaintiff went to health care and told Defendant Sharpe that he did not have his heart and asthma medications and that he was experiencing angina and breathing difficulties (Dkt. #1, page 7).  Plaintiff reports that he was returned to his cell and saw Dr. Burtch later that day at approximately 12:00 pm.  On December 14, 2005, when Plaintiff saw Defendant Sharpe in health care, with the same complaints, Plaintiff asserts that  she "posted a '911-Needs eval for Cardiac meds. Out" (Dkt. #8/30, page 7 (citing Ex.-A-35); Dkt. #9/25, page 13).  Although Defendant Sharpe has yet to file an Affidavit, summary judgment should be granted to her on this record because Plaintiff allegations regarding her only deal with the November 25, 2005, letter discussed above and do not support a deliberate indifference claim and further, and her actions on November 30, 2005, and December14, 2005,  are also insufficient to support a finding of deliberate indifference.

**Defendant Lemma**

The record reveals that Defendant Lemma saw Plaintiff on the evening of November 30, 2005, and upon examination she facilitated his transport to the community hospital ER where he was later discharged after his chest pains subsided and an enzyme test proved negative for a heart attack.  Based on these facts no reasonable jury could find Defendant Lemma deliberately indifferent to Plaintiff's medical needs.

**Defendants Svensen and Alexander**

Plaintiff alleges in his Complaint that on November 23, 2005, Defendant Lemma indicated that he could "go a few days without [his] meds, do not worry about it."  (Dkt. #1, page 6). Yet, Defendant Lemma's Affidavit indicates that he was off that day.  (Dkt. #32, Exhibit A).

Plaintiff explained in his responsive pleading that he confused Defendant Lemma with Defendant Svensen because he was new at SMF (Dkt. #43, page 8).

In his Affidavit, Defendant Svenson states that he "do[es] not recall prisoner Reeves calling out for help during rounds on November 25, 2005." (Dkt. #32, Exhibit F). In Plaintiff's responsive pleading he alleges that he notified Defendant Svenson that he was without medications and that his medications were about to expire. (Dkt. #43, page 8). Further, he alleges that when he told them that he was having heart pains and breathing difficulty, Svenson stated, "oh, you can go a few days with your meds, do not worry about it." *Id.*

Defendant Alexander stated in his Affidavit that he "did the initial admission transfer assessment on prisoner Reeves when he arrived at SMF on November 23, 2005, at 9:22 pm." (Dkt. #32, Exhibit B). Defendant Alexander maintains that Plaintiff "had valid orders for all his medication" at his initial assessment and showed no signs of chest pain, breathing problems, and did not relay any symptoms to Defendant Alexander when he was admitted to SMF. Plaintiff contends that several of his medications[10] expired on November 24 and 25, 2005; and alleges that he did not have valid orders on all medications because he only had seven of the thirteen medications he was prescribed. (Dkt. #43, page 9). Further, Plaintiff contends that if Defendant Alexander followed MDOC Policy Directive 03.04.100(22), he would have known that Plaintiff could not go until November 30, 2005, when he was scheduled for a visit with the physician (Dkt. #43, page 5).

_____

[10]Plaintiff states that the following medications expired on November 24, 2005, thru November 25, 2005: Hydrochlorothiazide 25mg, Enallapril Maleate 20 mg, Albuterol 90-mcg, Triamcinolone Acetonide 100 mcg, Aspirin 81 mg, Nitroglycerin patches 0.3mg/hr. Dkt. #28, pages 4-5).

On November 23, 2005, when Plaintiff was transferred to SMF, Defendant Alexander scheduled him for a "Physical/Mid-level follow-up-chronic care clinic evaluation on 11/30 (Exhibit L, page 101). Defendant Alexander noted that when transferred his "general appearance [was] (healthy adult male)." (Ex.-A-7). Further, the notes indicated that Plaintiff had "on person medications." *Id.*

Plaintiff argues that Defendants are incorrect in stating that he had "on person medications." (Dkt. #43, page 4). Plaintiff's Ex-A-6,[11] a clinical progress noted from MBP, however reveals the following: "pt. seen briefly in seg a block this morning before his transfer downstate today his [sic] meds were apparently packed up but we were able to give him his morning dose of pills along with ntg patch and a few ntg tabs.nad [sic] seen." (Dkt. #43 ). Plaintiff admits this, but argues that "there were several heart, blood pressure, and asthma medications that plaintiff did not receive that day." (Dkt. #63, page 4). Further, he states that "[c]ontrary to Defendants [sic] contentions that the rest of my medications were packed in my property, exhibit-C1-C5 are the Prisoner Personal Property Receipts that were completed by officer Flurey at LMF, and there is no indication that any medications were packed in my property." (See Ex-C1-C5). Yet, Plaintiff's December letter acknowledges that he got "my meds . . . the evening of November 25, 2005," suggesting the medications packed from his prior facility arrived November 25" although apparently these medications did not include his Nitro patches or inhaler.

Defendants Svensen and Alexander are entitled to Summary Judgment because no reasonable jury on this record could find that they were deliberately indifference to a serious

---

[11]The note is also available at Dkt. #63, Exhibit 3.

medical need regarding Plaintiff's medications (Dkt. #28, page 8).  Clearly, Plaintiff heart condition would qualify as a serious medical condition for which he was taken to the hospital for observations to rule out a heart attack on December 1, 2005, and again on December 7, 2005. (Exhibit M, pages 1-3, 8).  Plaintiff was told a former cauterization showed stenosis of 30-40%." (Exhibit M, page 8).  Yet, even if Plaintiff can satisfy the first objective prong relating to a serious medical need, on this record he again cannot satisfy the *Wilson* second subjective prong of deliberate indifference based.  *Wilson*, 501 U.S. at 300.

Plaintiff alleges that it was Defendant Svensen's statement that he could go without his medications until he saw the doctor.  Again, Plaintiff was transported with some Nitro tabs, he admitted getting certain of his medication on November 25, 2005, and he saw a doctor on November 30, when he received more medications.  It appears that while he did not have nitro patches, he had Nitro pills available to him, because three were given to him on the evening of November 30.  Defendant Svensen would also have known if he suffered severe symptoms that the facility would provide transport to an appropriate medical facility.   Based on this record, and without more regarding Defendant Svensen, a jury could at most find that his speculative comment regarding Plaintiff's ability to go without his medications until he saw his doctor to be negligent but not of a degree of severity to prove deliberate indifference.

As to Defendant Alexander, in the initial consult he scheduled Plaintiff for a visit with the doctor seven days later.  Although, a delay in access to medical attention can violate the Eighth Amendment when it is "tantamount to 'unnecessary and wanton infliction of pain,'" *Hill*, 40 F.3d at1187, the present case does not present such a scenario.  Like Defendant Svensen, Defendant Alexander may have been negligent in failing to schedule Plaintiff for a more prompt

visit, but a jury could not find from ths statement and inaction that Defendant Alexander was deliberately indifferent.

In *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 -900 (6th Cir. 2004), the Sixth Circuit distinguished between two types of cases where there is a delay in medical treatment. The first is

> *Napier*, [where] an arrestee suffering from kidney failure was kept from his scheduled dialysis while incarcerated for twenty-nine hours. 238 F.3d at 741. The evidence showed that he missed forty-one of his thrice-weekly dialysis treatments in 1997, including a treatment session scheduled three days prior to his incarceration and the session following his release, and that he even told a prison guard that he had an appointment that day but missing it was "no big deal" because he had "missed them before." *Id*. . . . the "verifying medical evidence" requirement is relevant to those claims involving minor maladies or non-obvious complaints of a serious need for medical care. *Napier*, which was relied upon by the district court, falls within this branch of decisions. In a word, *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. Napier applies where the plaintiff's "deliberate indifference" claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury. . . .

*Id.* at 898-99 (citing *Napier*, 238 F.3d at 742).

> The second case is

> distinguishable from *Napier[12]* in that Blackmore's claim falls under the "obviousness" line of decisions. Here, Blackmore did not suffer from a long-term and well monitored illness, but rather exhibited obvious manifestations of pain and injury. Blackmore complained of "sharp" and "severe" stomach pains for an extended period of time. Significantly, Blackmore vomited--a clear manifestation of internal physical disorder. The jailers deemed Blackmore's condition sufficiently serious to place him in an observation cell. Blackmore complained orally and in writing for over two days before receiving medical treatment. With these facts, a jury could reasonably find that Blackmore had a serious need for medical care that was

---

[12]*Blackmore* contrasted "*Napier*, where the injury to the prisoner's kidney condition could not be discerned without competent medical proof." *Id.* at 899.

"so obvious that even a layperson would easily recognize the necessity for a doctors attention." *Gaudreault*, 923 F.2d at 208.

As the Supreme Court has held, the test for deliberate indifference is whether there exists a "substantial risk of serious harm," *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970 (emphasis added), and does not require actual harm to be suffered. *See also Smith v. Carpenter*, 316 F.3d 178, 189 n. 15 (2d Cir.2003) (observing that "actual physical injury is not necessary in order to demonstrate an Eighth Amendment violation" and declining to adopt a per se rule that such injury is required) (citing in part *Helling v. McKinney*, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)). Where the seriousness of a prisoner's needs for medical care is obvious even to a lay person, the constitutional violation may arise. This violation is not premised upon the "detrimental effect" of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm. When prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates the constitutional infirmity. In such cases, the effect of the delay goes to the extent of the injury, not the existence of a serious medical condition. Blackmore was suffering from appendicitis, and it is sufficient that the officers' delay in treatment of an obvious medical emergency posed a substantial risk of serious harm to Blackmore by subjecting him to unnecessary infliction of pain.

*Blackmore*, 390 F.3d at 899. The present case is more like *Napier*, although unlike *Napier*, Plaintiff did in fact complain that he needed certain medications. Yet, unlike *Blackmore*, Plaintiff was not experiencing "obvious manifestations of pain and injury" or other symptoms requiring immediate medical attention. While Plaintiff was on nitro patches and asthma inhalers due to his heart and asthma condition, Plaintiff went without these medications for about three weeks – although apparently receiving other cardiovascular medications that arrived November 25 and that apparently included Nitroglycerin tablets which he took shortly after midnight on November 30/December 1. These Defendants again would know that if Plaintiff's symptoms became more severe, more aggressive treatment was available at the facility's ER or at the local hospital's ER, as was provided to Plaintiff on December 1 and 7. On December 1, 2005, when Plaintiff went to the hospital, he was not treated with the "missing medications" because he had already taken sublingual Nitroglycerin at the facility which lessened his symptoms. On this

record some might find that reasonable nurses might differ on the urgency in getting Plaintiff

Nitro patches in addition to tablets and/or an inhaler.  Others might find that statement and the

decision not to take more aggressive steps was more than a reasonable difference of medical

judgment, and was outright negligent.  But with the other medications available to Plaintiff

including sublingual Nitroglycerin and with the emergency health care facilities available if

needed if the symptoms became worse and created an obvious risk of serious harm, a jury could

not find that the statements and inactions Plaintiff attributes to Defendants Svensen and

Alexander constitutes deliberate indifference to Plaintiff's cardiac or asthma condition.  They

should be granted summary judgment on this claim.

### C.    <u>Defendant Dr. Burtch</u>[13]

---

[13]  Defendant Dr. Burtch claims that the "three strikes" provision of 28 U.S.C. § 1915, should be applied to Plaintiff because the "imminent danger" exception does not apply to Plaintiff because it requires more than mere speculation of harm and, further only applies when the danger of injury exists when the complaint is filed.  (Dkt. #1, Ex. 3, page 2, citing *Swenson v. Pramstaller*, 169 Fed. Appx. 449, 450 (6th Cir. 2006); *Malik v. McGinnis*, 293 F.3d 559 (2d Cir. 2002)).

   Plaintiff's Complaint acknowledges his litigiousness (Dkt. #1, pages 4-5).  He did, however, claim that he is in "imminent danger."  *Id.* at page 11.  Further, in a responsive pleading he explained that he was in "imminent danger" because he had been "told that [he] will not be moved prior to the use of chemical agents."  (Dkt. #56, page 13).  This Court on April 7, 2006,  granted Plaintiff's Application to Proceed Without Prepayment of Fees (Dkt. #4).   This indicates a screening determined that he was in imminent danger or he would not have been eligible for IFP status pursuant to 29 U.S.C. § 1915(g).  There is no formal challenge before the court relating to Plaintiff's IFP status.  Because summary judgment is recommended for Dr.

Defendant Dr. Burtch is a physician at SMF.  Although Plaintiff names the medical staff at SMF in his December 1, 2005, letter, he fails to name Dr. Burtch until his December 12, 2005, letter to the Grievance Coordinator.  In this second letter, Plaintiff stated that

> Upon arriving at this facility I informed health care personnel that I did not have nitro patches or inhalers.  I had a doctor's visit on 11/30/05 at which time the doctor (Burch) [sic] was notified that I did not have inhalers or nitro patches.
> Dr. Burch [sic] notified me that he was renewing all meds and providing me with a medical detail to be removed from my cell prior to the use of chemical agents, however, Ive [sic] never received anything promised.  Due to Doctor Burche's [sic] failure to provide need meds I've [sic] been transported to the Hospital twice.

(Dkt. #1, Ex. 3, page 2).

Defendant Dr. Burtch argues that Plaintiff cannot establish that he acted with deliberate indifference.  Again, to show deliberate indifference, Plaintiff must show both that he had a serious medical need, and he must show that Defendant Dr. Burtch, being aware of that need, acted with deliberate indifference to it.  *Wilson*, 501 U.S. at 300.

In determining whether a prisoner's Eighth Amendment rights have been violated, the court distinguishes between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical care.  *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976).  "Plaintiff is contending that Dr. Burtch was aware that Plaintiff needed Nitro Patches [sic]  and Asthma Inhalers [sic] during the 11/30/05 visit and effectively failed to reorder the medication."  (Dkt. #56, page 8). As noted above, Plaintiff's heart condition would qualify as a serious medical condition.  But, as with the other Defendants, the subjective component of Dr. Burtch's action or inaction falls short of establishing deliberate indifference.

---

Burtch, this "three strikes" issue is not addressed further.

30

Plaintiff's claim regarding his asthma does not meet the objective component of deliberate indifference.  Plaintiff argues that none of the prescriptions on November 30, 2005, were for his asthma condition (Dkt. #61, pages 7-9).  While this is true, even when treated at the hospital on December 1, 2005,[14] and December 7, 2005, he was never treated with asthma medications.  On both visits the emergency room medical providers did not give Plaintiff any asthma inhalers or other remedies specifically tailored to treat his asthma. (Dkt. #32, Exhibit M).  The notes indicate that he suffers from asthma in the history, but he was only evaluated and observed for his chest pains.  *Id.* at 2-3. On this record, Plaintiff's asthma has not been shown to be a serious medical condition.  Thus, Defendant Dr. Burtch will be evaluated for deliberate indifference as it relates to the heart condition only.

On November 30, 2005, Dr. Burtch did prescribe medications relating to Plaintiff's heart condition (Dkt. #43, Ex-A-12).  He ordered the following medication during the visit:  Prilosec, Klor-con 10, Tenorim, Vasotec, Hydrodiurul, and Gaviscon.  The drug Tenorim is used to treat heart conditions such as Plaintiff's.

> TENORIM is indicated in the management of hypertension.  It may be used alone or in combination with other antihypertensive agents, particularly with a thiazide-type diuretic. . . .
> TENORIM is indicated for the long-term management of patients with angina pectoris. . . .
> TENORIM is indicated in the management of hemodynamically stable patients with definite or suspected acute myocardial infarction to reduce cardiovascular mortality.

Physicians' Desk Reference 696 (60th ed. 2006).

---

[14]Plaintiff argues that the fact that treatment notes from the hospital on December 1, 2005, indicating that he had "non-specific chest pain" and "no significant abnormalities of the mediastinum, heart or lungs" mean "nothing." (Dkt. # 63, page 5).

Plaintiff complains that he did not get his nitro patches, (Dkt. #56, page 6; Dkt. #61, pages 7-9), but the patches are prescribed for the same purpose as the Tenorim.  Specifically, the nitro patches, Nitro-dur, are "indicated for the prevention of angina pectoris due to coronary artery disease."  Physicians' Desk Reference 3061 (60th ed. 2006).  Further, [t]he onset of action of transdermal nitroglycerin is not sufficiently rapid for this product to be useful in aborting an acute attack."  *Id.*   Again, as noted above, Plaintiff had available sublinqual Nitroglycerin which was administered at the corrections facility on the November 30/December 1 onset of severe chest pain.

Plaintiff also indicates that Dr. Burtch improperly indicated in the medical record that he had *not* gone without any of his medications (Dkt. #56, page 5).  Yet, if Dr. Burtch incorrectly answered the questions on Plaintiff's chart regarding his medication compliance, this would not amount to deliberate indifference.

Plaintiff argues that he went to the hospital on December 1, 2006, due to lack of medications for his heart problems, but the medical records from that visit do not indicate that he was treated with any heart medications by hospital personnel and the record shows three Nitroglycerin tablets taken at the facility before going to the community hospital had lessened Plaintiff's symptoms  (Dkt. # 32, Exhibit M, pages 1-3).

Plaintiff argues further that Dr. Burtch failed to comply with MDOC policy because he did not see Plaintiff after his return from the hospital.  Plaintiff complains that because he was without his medications, he again had to be hospitalized on December 7, 2005 (Dkt. #56, page 7).   The record shows Dr. Burtch listed certain of Plaintiff's medications and prescribed others.

Plaintiff in his complaint admits multiple medications were brought to his cell on December 1, 2005. (Dkt. # 1, p.8)

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake*, 537 F.2d at 860, n.5. Essentially, Plaintiff is disagreeing with Plaintiff's prescription for Tenorim rather than nitro paste. This is insufficient to present a constitutional claim.

Even if Plaintiff could establish that Defendant was negligent in treating his condition by failing to fill his prescriptions promptly, this would be insufficient as well. "A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Farmer*, 511 U.S. at 835. "When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). Allegations of medical malpractice or negligent diagnosis and treatment fail to state an Eighth Amendment claim. *Estelle*, 429 U.S. at 106.

Defendant Dr. Burtch should also be granted summary judgement because no reasonable jury could, on the current record, find that Dr. Burtch was deliberately indifferent to Plaintiff's serious medical needs.

## V.    CONCLUSION

For these reason it is RECOMMENDED that Defendants Sivik, Wallington, and Kedron's Motions for Summary Judgement be DENIED; and that Summary Judgement be GRANTED for

33

Defendants Sharpe, Peters, Lemma, Svensen, Bailey, Devooght, Alexander, and Dr. Burtch.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72(d)(2), a copy of any objections is to be served upon this Magistrate Judge. Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections. A party may file a reply brief within 5 days of service of a response. The reply shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.

Date: February 16, 2007                                  s/Steven D. Pepe
Flint, Michigan                                          United States Magistrate Judge

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 16, 2007.


s/Deadrea Eldridge
Deputy Clerk